**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SANDY A. MORIARTY,<br><br>Plaintiff,<br><br>v.<br><br>FOREST RIVER, INC.,<br>RV RETAILER ARKANSAS, LLC<br>d/b/a BLUE COMPASS RV,<br>RV RETAILER, LLC d/b/a<br>BLUE COMPASS RV,<br>GENERAL MOTORS LLC, and<br>M&T BANK,<br><br>Defendants. | ) | Case No. 4:26-cv-00940-ZMB<br><br>The Honorable Z. M. Bluestone<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff Sandy A. Moriarty, by and through her undersigned counsel, and for her Second Amended Complaint against Defendants Forest River, Inc., RV Retailer Arkansas, LLC d/b/a Blue Compass RV, General Motors LLC, and M&T Bank, states and alleges as follows. Plaintiff amends before the September 2, 2026 deadline imposed in the Case Management Order – Track 2: Standard, issued on August 26, 2026. (See Doc. #: 38.) Plaintiff asserts causes of action under the Missouri Merchandising Practices Act, Chapter 407, R.S.Mo. (the "MMPA"); the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. (the "MMWA"); the Missouri Uniform Commercial Code, Chapter 400, R.S.Mo.; the FTC Holder Rule, 16 C.F.R. Part 433; and Missouri common law.

## NATURE OF THE ACTION

1. This is a consumer-protection, warranty, products-liability, and fraud action arising out of the May 31, 2024 sale to Plaintiff of a new 2025 Forest River Sunseeker LE 2350S Class C motorhome (the "Motorhome") that was defective on delivery and was never made conforming. The Motorhome manifested safety-critical defects—including a chassis steering system that pulled violently to the right and caused Plaintiff to nearly lose control of the Motorhome and leave the roadway on at least two occasions, a defective propane/LP system creating a risk of fire and

explosion, intermittent no-start conditions requiring the chassis to be towed for repair on multiple occasions, and structural cracks in the coach—beginning with Plaintiff's first use at only 418 miles. Defendants kept the Motorhome out of service in their exclusive custody for more than 114 cumulative days, failed to deliver title for more than fifteen months in violation of § 301.210, R.S.Mo., and made a series of specific, dated misrepresentations and concealments to induce Plaintiff to keep paying and to forbear from suit. Plaintiff further alleges that Defendant General Motors LLC, manufacturer of the chassis upon which the Motorhome is built, placed that chassis into the stream of commerce without required damage disclosures, extended a chassis warranty it then refused, through its authorized dealer network, to honor, and is liable for the chassis-related defects described herein; and that Defendant M&T Bank, as the current holder of the retail installment contract financing the Motorhome, is liable derivatively for Plaintiff's claims against the selling dealer under the FTC Holder Rule.

**PARTIES**

2. Plaintiff Sandy A. Moriarty ("Moriarty" or "Plaintiff") is an adult individual and a citizen and resident of Franklin County, Missouri.

3. Defendant Forest River, Inc. ("Forest River") is a corporation organized under the laws of Indiana with its principal place of business in Elkhart, Indiana, and is therefore a citizen of Indiana. Forest River has admitted that it is the end-stage manufacturer of the Motorhome and a wholly owned subsidiary of Berkshire Hathaway, Inc. Forest River conducts substantial and continuous business throughout Missouri, including through authorized dealers such as the selling Defendant.

4. Defendant RV Retailer Arkansas, LLC d/b/a Blue Compass RV (the "Selling Defendant" or "Blue Compass") is the entity that sold and serviced the Motorhome. The signed Retail Installment Contract and Security Agreement and the signed Buyer's Order identify the seller as "Blue Compass RV" at 18155 Historic Route 66, Eureka, Missouri 63025, and the Missouri certificate of title for the Motorhome identifies the dealer as "RV Retailer Arkansas, LLC dba Blue Compass RV" at that same address. By a sworn "One and the Same Name Affidavit" executed by Evgeny V. Samoylov, Controller and Treasurer of RV Retailer Arkansas, LLC, the Selling Defendant has attested that "RV Retailer Arkansas, LLC dba Blue Compass RV is one and the same entity as RV Retailer Arkansas, LLC dba Great Escapes RV Center."

5. Blue Compass is a limited liability company, none of whose members is a citizen of Missouri. The names and citizenship of the members and sub-members whose citizenship is attributed to the Selling Defendant are set forth in the Selling Defendant's Disclosure Statement on file in this action, and reflect citizenship in Florida, Texas, Arizona, Maryland, Pennsylvania, and the District of Columbia.

6. Defendant General Motors LLC ("GM") is a limited liability company organized under the laws of Delaware. Upon information and belief, GM's sole member is General Motors Holdings LLC, a Delaware limited liability company whose sole member is General Motors Company, a Delaware corporation with its principal place of business in Detroit, Michigan; GM is therefore not a citizen of Missouri for diversity purposes. GM manufactured the 2024 Chevrolet 3500 chassis (the "Chassis") upon which the Motorhome's coach is mounted, and is registered to do business in Missouri, where it may be served through its registered agent, CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101. GM transacts substantial and continuous business in Missouri, including through its network of authorized Chevrolet dealerships, and placed the Chassis into the stream of commerce with the expectation that it would be purchased by Missouri consumers such as Plaintiff.

7. Defendant M&T Bank ("M&T Bank") is, upon information and belief, a New York banking corporation with its main office at One M&T Plaza, Buffalo, New York 14203-2399, and is not a citizen of Missouri for diversity purposes. M&T Bank is the assignee and current holder of the Retail Installment Contract and Security Agreement financing Plaintiff's purchase of the Motorhome, and regularly extends and services consumer credit within Missouri.

## JURISDICTION AND VENUE

8. This action was commenced in the Circuit Court of St. Louis County, Missouri (Cause No. 26SL-CC03486), and was removed to this Court by Defendants Forest River, Inc. and RV Retailer, LLC d/b/a Blue Compass RV.

9. This Court has original subject-matter jurisdiction over Plaintiff's Magnuson–Moss Warranty Act claims under 15 U.S.C. § 2310(d)(1)(B) and 28 U.S.C. § 1331, the amount in controversy exceeding $75,000 exclusive of interest and costs, and has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

10. This Court also has jurisdiction under 28 U.S.C. § 1332(a). The addition of General Motors LLC and M&T Bank as Defendants in this Second Amended Complaint does not defeat complete diversity: as alleged above, neither GM nor M&T Bank is a citizen of Missouri, Plaintiff's home state, and neither is a citizen of Indiana or of any state of which Blue Compass's members are citizens. The allegations of this Second Amended Complaint are intended to be internally consistent with the record; Plaintiff neither concedes nor waives any position concerning the basis for, or propriety of, removal.

11. This Court has personal jurisdiction over each Defendant. Forest River transacts business within Missouri, contracts to supply goods within Missouri, and caused tortious injury within Missouri; Blue Compass operates a motor vehicle dealership in St. Louis County, Missouri, is registered to do business in Missouri, and committed the acts complained of in St. Louis County, Missouri; GM regularly transacts business in Missouri through its authorized dealer network, placed the Chassis in the stream of commerce knowing it would be incorporated into a motorhome and sold to a Missouri consumer, and caused tortious injury within Missouri; and M&T Bank extended and administers consumer credit to a Missouri resident for the purchase of property located and used in Missouri, and holds a security interest recorded with the Missouri Department of Revenue.

12. Venue is proper in this District and Division under 28 U.S.C. §§ 105(a)(1) and 1391(b)(2) because the sale of the Motorhome and a substantial part of the events giving rise to Plaintiff's claims occurred in St. Louis County, Missouri.

13. All conditions precedent to the bringing of this action, if any, have been performed, satisfied, waived, excused, rendered futile, or are otherwise inapplicable.

## FACTUAL ALLEGATIONS

### *A. The Purchase of the Motorhome.*

14. On May 31, 2024, Plaintiff purchased a new 2025 Forest River Sunseeker LE 2350S Class C motorhome bearing Vehicle Identification Number 1HA3GSC71RN001697 from Blue Compass at its dealership located at 18155 Historic Route 66, Eureka, Missouri 63025. The Motorhome consists of a Forest River-manufactured coach mounted upon the Chassis, a 2024 Chevrolet 3500 chassis manufactured by GM—facts Forest River has admitted.

15. Plaintiff and Blue Compass memorialized their agreement in a written Buyer's Order (Contract No. 9456533) and a written Retail Installment Contract and Security Agreement

dated May 31, 2024, each signed on behalf of the seller "Blue Compass RV" and each identifying the dealer at the Eureka, Missouri address. The Retail Installment Contract was assigned to M&T Bank as lienholder and, upon information and belief, remains held by M&T Bank as of the filing of this Second Amended Complaint.

16. The Retail Installment Contract states a cash sale price of $84,135.00, an amount financed of $76,135.00 (after an $8,000.00 down payment), an annual percentage rate of 8.25%, a finance charge of $79,557.80, a total of payments of $155,692.80 over 240 monthly installments of $648.72 beginning June 30, 2024, and a total sale price of $163,692.80. The vehicle price was $80,295.00, and Plaintiff was charged an additional $2,395.00 for an extended Vehicle Service Contract and $1,445.00 for roadside assistance.

17. The Retail Installment Contract expressly provides that it "is governed by the law of Missouri and applicable federal law and regulations," and includes the Federal Trade Commission Holder Rule notice, required by 16 C.F.R. § 433.2, preserving Plaintiff's claims and defenses against any holder of the contract, including its current holder, M&T Bank.

18. Plaintiff purchased the Motorhome primarily for personal, family, and household purposes, including personal travel and visits with family members residing in distant states.

19. Forest River extended a written Limited Warranty on the coach—which Forest River has admitted issuing—and thereafter acknowledged warranty coverage of the Motorhome by, among other things, authorizing warranty repairs at Blue Compass, processing warranty claims submitted for the Motorhome, corresponding with Plaintiff regarding warranty matters, and issuing Technical Service Bulletin No. TSB 34-1893 applicable to the Motorhome. By these affirmations and conduct, Forest River created an express warranty under § 400.2-313, R.S.Mo., that the Motorhome would be free from substantial defects in material and workmanship.

20. Forest River and Blue Compass are each merchants with respect to motorhomes within the meaning of § 400.2-104, R.S.Mo., and an implied warranty of merchantability arose in the sale of the Motorhome under § 400.2-314, R.S.Mo. GM is a merchant with respect to motor vehicle chassis within the meaning of § 400.2-104, R.S.Mo., and an implied warranty of merchantability arose with respect to the Chassis under § 400.2-314, R.S.Mo.

***B. Title Fraud and Violation of § 301.210, R.S.Mo.***

21. Section 301.210.1, R.S.Mo., requires a motor vehicle dealer to deliver title to the buyer at the time of delivery of the vehicle, and Missouri courts hold that "[a]bsolute technical

compliance with the statute is required, otherwise the sale is fraudulent." *Oliver v. Cameron Mut. Ins. Co.*, 866 S.W.2d 865, 868 (Mo. App. W.D. 1993).

22. Blue Compass did not deliver a Missouri certificate of title to Plaintiff on the date of sale, and did not deliver title within thirty (30) days of the sale.

23. Despite Plaintiff's repeated requests for the title, Blue Compass failed and refused to deliver the Missouri certificate of title to Plaintiff for more than fifteen (15) months following the sale.

24. During that period, Plaintiff contacted the Missouri Department of Revenue directly in an effort to view or obtain a copy of the title. A Department of Revenue representative informed Plaintiff that Plaintiff was not entitled to see or obtain a copy of the title because Blue Compass and/or Forest River were shown as the owner of record, and declined to confirm whether Plaintiff's name or trust appeared on the title. Plaintiff informed the representative that, at most, Blue Compass and/or Forest River would properly appear as a lienholder rather than an owner, given that the Motorhome had been sold and financed.

25. Blue Compass and/or Forest River did not cause a title reflecting Plaintiff's name (or her trust) to be issued and delivered until after Plaintiff advised that she would contact authorities for the failure to timely deliver title. Only after that communication did Plaintiff receive a Missouri certificate of title identifying M&T Bank as lienholder and reflecting Plaintiff's name and/or trust as owner. Plaintiff has retained proof of postage substantiating the date on which that title was ultimately mailed to her, which date remains more than fifteen months after the May 31, 2024 sale.

26. Throughout the entire period in which Plaintiff lacked title, Plaintiff was nonetheless required to, and did, make monthly loan payments under the Retail Installment Contract and to maintain insurance, registration, and other carrying costs on the Motorhome.

27. Under Missouri law, "if a buyer is not provided with a title to the vehicle, the sale is void and the buyer is relieved of the obligation to make payments on the debt." *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 197 (Mo. App. W.D. 2013). Blue Compass has not refunded any of the loan payments, insurance, registration, or carrying costs Plaintiff was forced to expend during the period of nondelivery.

28. The transaction documents further reflect a material model-year discrepancy. The General Motors Certificate of Origin reflects a 2024 model-year chassis (with a manufacture date

of November 17, 2023), while the Forest River Certificate of Origin reflects a 2025 model-year coach (dated May 3, 2024). Plaintiff was sold and titled the Motorhome as a "2025" unit, notwithstanding that the chassis upon which the entire vehicle is built is, as Forest River has admitted, a 2024 model.

***C. The Defects and the Repair History.***

29. The Motorhome was not free from substantial defects in material and workmanship at the time of sale or within the warranty period.

30. Beginning with Plaintiff's first use of the Motorhome, multiple safety-critical and habitability defects manifested, including but not limited to:

(a) a generator oil leak;

(b) dangerous steering misalignment causing the Motorhome to pull violently to the right and to "wander all over the road," creating a risk of loss of vehicle control;

(c) a faulty propane/LP system, including a defective LP detector, creating a risk of fire, explosion, and asphyxiation;

(d) structural cracks in the coach;

(e) compartment locks that would not properly open and close;

(f) electrical defects, including air-conditioning breaker failures;

(g) intermittent no-start conditions, described further below;

(h) chassis-frame corrosion and an active fuel-system leak, described further below; and

(i) other manufacturing and workmanship defects.

31. From on or about July 9 through July 20, 2024, with the odometer reading only 418 miles, Plaintiff presented the Motorhome to Blue Compass for warranty repair. Blue Compass's own service order documented that the Motorhome "pulls hard to the right side when pressure is taken off of the steering wheel" and that the alignment was "way out on unit." Upon information and belief, this steering condition was a pre-delivery, manufacturing, or chassis-condition defect.

32. On or about October 18, 2024, Blue Compass generated a purchase order for a second alignment without Plaintiff's authorization, confirming that the steering defect had not been remedied during the prior repair attempt.

33. On or about November 15, 2024, the Motorhome had to be towed to Blue Compass after it would not start and continued to exhibit safety-critical defects.

34. The Motorhome then remained out of service in Blue Compass's exclusive possession from November 15, 2024 through approximately February 12, 2025—a period of approximately eighty-nine (89) consecutive days—during which Blue Compass failed to remedy the safety-critical defects despite having continuous custody of the Motorhome. Together with the July 2024 service interval and other repair attempts, the Motorhome was out of service in Defendants' custody for more than 114 cumulative days.

35. During the November 15, 2024 to February 12, 2025 interval, the Motorhome accumulated approximately 250 to 284 unexplained miles while in Blue Compass's exclusive custody. Blue Compass's service representative refused to account for the additional mileage and offered inconsistent explanations, stating at various times both that he had "driven [the Motorhome] all over the place" and "around the lot," even though the corresponding service order falsely states that the no-start condition "could not be duplicated" despite the Motorhome having been towed in twice.

36. Notwithstanding Plaintiff's express request that the Motorhome be winterized while in Blue Compass's custody during the winter months, Blue Compass failed to properly winterize the Motorhome, resulting in toilet water leaking into a storage compartment, a urine-like odor, and a biohazard condition within the Motorhome.

37. Upon recovery of the Motorhome, Plaintiff discovered evidence consistent with unauthorized use or occupancy of the Motorhome while in Blue Compass's custody, including the unexplained mileage, the absence of winterization despite cold-weather storage, and the discovery inside the Motorhome of a personal item (a finger ring) that did not belong to Plaintiff. The independent towing operator who repeatedly transported the Motorhome to Blue Compass observed that, in his professional experience, he had never previously picked up the same motorhome "over and over" from a single dealership for repeat repair attempts.

38. Forest River issued Technical Service Bulletin No. TSB 34-1893 in or around April 2025 concerning structural cracks in the coach—a defect Plaintiff had previously reported. Any TSB-related repairs attempted were not properly completed, and the structural cracks remain unrepaired.

39. On or about September 22 through 24, 2025, Plaintiff retained Good News RV Repair, an independent and qualified third-party inspection and repair facility, to conduct a comprehensive inspection of the Motorhome. The inspection identified, among other defects,

chassis rust in multiple locations on the Chassis's main frame, improper sealing of components, an active propane leak, and a fuel-filter spill. Good News RV issued a repair estimate of $5,168.54, in addition to $540.00 already incurred for diagnostic services.

40. Plaintiff filed a Vehicle Owner's Questionnaire complaint with the National Highway Traffic Safety Administration (NHTSA), assigned VOQ No. 11641674, regarding the faulty propane tank and LP detector—a safety-critical defect creating a risk of fire, explosion, and asphyxiation—which remains the subject of an NHTSA Office of Defects Investigation inquiry.

41. Notwithstanding the safety-critical nature of the defects, the multiple repair attempts, and the extended periods during which the Motorhome was out of service in Defendants' custody, Defendants have failed and refused to remedy the defects within a reasonable time. The defects substantially impair the use, market value, and safety of the Motorhome to Plaintiff.

***D. The Defendants' Specific Misrepresentations and Concealments (Particulars).***

42. The Parts-Delay Misrepresentation. During the period from on or about November 21, 2024 through January 11, 2025, a Blue Compass service representative identified to Plaintiff as "Ethan" repeatedly represented to Plaintiff, by telephone and voicemail directed to Plaintiff at her Missouri residence, that the parts needed to repair the Motorhome were delayed or unavailable and that the delay was the cause of Blue Compass's continued retention of the Motorhome. Those representations were false. Forest River's own representative later confirmed that the relevant part had in fact been ordered in late January 2025 and overnighted to Blue Compass, directly contradicting Blue Compass's representation of a multi-month parts delay. The representation was material and was made to induce Plaintiff to leave the Motorhome in Blue Compass's custody and to forbear from asserting her legal remedies, and Plaintiff justifiably relied on it to her detriment.

43. The Falsified "Could Not Duplicate" Service Order. In or about the November 15, 2024 to February 12, 2025 service interval, Blue Compass, through its service department at the Eureka, Missouri dealership, generated a written service order representing that the no-start condition "could not be duplicated." That representation was false when made: the Motorhome had been towed to Blue Compass twice for that very condition, and the same representative simultaneously admitted having driven the Motorhome "all over the place." The false service entry was material because it was used to justify the failure to repair and the return of the Motorhome to Plaintiff as purportedly sound, and Plaintiff relied on Defendants' service records in continuing to seek repair rather than suit.

44. The Winterization and Mileage Concealment. Although Plaintiff expressly requested winterization before Blue Compass took winter custody of the Motorhome on or about November 15, 2024, Blue Compass failed to perform it and concealed both that failure and the accumulation of approximately 250 to 284 unexplained miles, refusing to provide any accounting when Plaintiff asked. The omitted facts were material to Plaintiff's decisions whether to retain the Motorhome and whether to pursue legal remedies.

45. The Title-Delivery Misrepresentations. At and after the May 31, 2024 sale, Blue Compass represented to Plaintiff, at its Eureka, Missouri dealership, that title would be delivered in the ordinary course; in fact, title was withheld for more than fifteen months in violation of § 301.210, R.S.Mo., and, as alleged above, Blue Compass and/or Forest River initially told a Missouri Department of Revenue representative information suggesting Plaintiff was not the owner of record. Blue Compass made these representations knowing them to be false or with reckless disregard for their truth, intending that Plaintiff rely, and Plaintiff did rely by completing and continuing to perform the transaction.

46. The Model-Year Misrepresentation. At the May 31, 2024 sale, Blue Compass sold and titled the Motorhome to Plaintiff as a "2025" unit at its Eureka, Missouri dealership, when the General Motors Certificate of Origin reflected a 2024 model-year chassis manufactured November 17, 2023. The misrepresentation of model year was material to the value and price of the Motorhome.

***E. Notice.***

47. Over a period exceeding 443 days, Plaintiff repeatedly communicated with Blue Compass and Forest River regarding the defects, the failure of warranty repair attempts, and Plaintiff's demand for an effective remedy, thereby affording Defendants ample notice and a reasonable opportunity to cure under § 400.2-607, R.S.Mo., 15 U.S.C. § 2310(e), and the terms of any Limited Warranty.

48. Plaintiff also lodged a consumer complaint with the Missouri Attorney General's Office, which acknowledged receipt on or about March 13, 2025, and filed the NHTSA complaint described above. In February 2026, Plaintiff, through legal counsel, sent comprehensive demands to Forest River, Blue Compass, and GM—the latter addressed to GM's Chief Executive Officer—placing GM on direct notice of the chassis-related defects and the demand for relief well before the filing of this Second Amended Complaint.

***F. Ascertainable Loss and Damages.***

49. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered an ascertainable loss of money and property, and damages in excess of $210,000.00, attorney's fees, costs, and interest, calculable with a reasonable degree of certainty, including but not limited to the following itemized categories of loss:

(a) the cash sale price of the Motorhome of $84,135.00, including an $8,000.00 down payment and $76,135.00 financed;

(b) finance charges at 8.25% APR, including loan interest paid (approximately $14,296.32 to date and continuing) and a total finance charge of $79,557.80 over the life of the loan;

(c) Missouri sales tax of $5,640.07 and license fees of $38.25;

(d) the $540.00 Good News RV diagnostic charge and the $5,168.54 Good News RV repair estimate for unremedied defects, including chassis rust and fuel-system repairs attributable to the Chassis;

(e) after-sale parts of approximately $1,165.57;

(f) insurance premiums of approximately $2,619.45 maintained on an unusable Motorhome;

(g) diminution in value of the Motorhome of approximately $11,090.75;

(h) loan payments made during the more-than-fifteen-month period in which title was withheld;

(i) towing and transportation expenses (including towing necessitated by the Chassis's intermittent no-start condition), alternative lodging and travel expenses, pet-boarding expenses, and meals incurred as a consequence of the loss of use of the Motorhome; and

(j) emotional distress and such other damages as will be proven at trial.

50. Plaintiff would not have purchased the Motorhome on May 31, 2024 had she known on that date what she knows now. The actual value of the Motorhome Plaintiff received was, and remains, substantially less than the price Plaintiff paid and continues to pay. In light of the unreasonable number and length of repair attempts and the safety-critical defects that remain unrepaired, Plaintiff has lost confidence that Defendants will ever remedy the Motorhome.

***G. General Motors' Chassis, the Chassis Warranty, and GM's Refusal to Honor It.***

51. GM designed, manufactured, and placed into the stream of commerce the Chassis upon which the Motorhome is built, with the expectation that it would be incorporated into a finished motorhome and sold to a consumer such as Plaintiff. The Chassis was manufactured on November 17, 2023—more than six months before the coach was completed and the Motorhome was sold to Plaintiff—during which time the Chassis was subject to GM's, Forest River's, and/or Blue Compass's care, custody, and inspection.

52. On at least two separate occasions during Plaintiff's initial use of the Motorhome, the severe steering and alignment defect described above caused Plaintiff to nearly lose control of the Motorhome and leave the roadway. These incidents occurred as a direct result of the chassis-condition defect first documented at 418 miles, described in Blue Compass's own service records as pulling "hard to the right" with the alignment "way out on unit."

53. On multiple occasions, the Motorhome exhibited intermittent no-start conditions attributable to the Chassis, requiring the Motorhome to be towed for repair. Upon information and belief, a faulty starter—a Chassis-level component—was ultimately identified and replaced.

54. The independent inspection performed by Good News RV in September 2025 identified chassis rust in multiple locations on the Chassis's main frame, together with an active fuel-filter spill, both concerning Chassis-level components manufactured and supplied by GM, separate and apart from the Forest River-manufactured coach.

55. Upon information and belief, GM extended a written New Vehicle Limited Warranty applicable to the Chassis and its components (the "Chassis Warranty"), the specific terms of which are within GM's possession and will be produced in discovery, obligating GM's authorized Chevrolet dealers to perform no-charge warranty repairs on Chassis-level defects such as those described above.

56. On at least three occasions, Plaintiff contacted Chevrolet-authorized dealerships in Missouri, seeking warranty service for the Chassis, including towing and repair of the no-start condition. Each dealership refused to service the Motorhome, informing Plaintiff that it did not work on motorhomes, notwithstanding that the Motorhome is built upon a GM chassis that GM's own Chassis Warranty purports to cover.

57. The Motorhome was ultimately towed to Modern Auto Chevrolet in Washington, Missouri, which performed repair work on the Chassis. Upon information and belief, Modern Auto

performed that work as an informal accommodation to a Forest River representative rather than as an authorized warranty repair, and did not process the work as a Chassis Warranty claim.

58. Plaintiff was never informed, before purchasing the Motorhome, that GM's authorized dealer network would refuse to service a motorhome built upon a GM chassis, or that Plaintiff would be unable to obtain warranty service for the Chassis notwithstanding the Chassis Warranty and Plaintiff's purchase of an extended Vehicle Service Contract.

59. Upon information and belief, the Chassis exhibited significant damage and/or a deteriorated condition—including the frame corrosion and fuel-system condition identified by Good News RV and the severe alignment/steering condition manifest at only 418 miles—existing prior to or at the time GM transferred the Chassis to Forest River. Section 407.1343, R.S.Mo., required GM, as manufacturer or distributor of the Chassis, to disclose any such significant damage to the dealer in writing prior to delivery, and required the dealer in turn to disclose such damage to Plaintiff in writing and obtain her acknowledgment. Upon information and belief, GM did not make the written disclosure required by § 407.1343, R.S.Mo., and no such disclosure was ever made or acknowledged by Plaintiff. The full extent and timing of GM's knowledge concerning the Chassis's condition, and GM's compliance or noncompliance with § 407.1343, R.S.Mo., are within GM's possession and will be established through discovery.

***H. M&T Bank as Holder of the Contract.***

60. The Retail Installment Contract and Security Agreement was assigned to M&T Bank, which is now, and has at all relevant times material to this Second Amended Complaint been, the holder of the Contract.

61. The Contract contains the notice required by the FTC Holder Rule, 16 C.F.R. § 433.2, providing that any holder of the Contract is subject to all claims and defenses Plaintiff could assert against the seller of the Motorhome, with recovery under the notice not to exceed amounts paid by Plaintiff under the Contract.

62. M&T Bank has received Plaintiff's monthly payments under the Contract and, upon information and belief, continues to hold the Contract as of the filing of this Second Amended Complaint.

**COUNT I**
**VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT (§ 407.020, R.S.Mo.)**
**(As to Blue Compass)**

63. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

64. Plaintiff is a "person" under § 407.010(5), R.S.Mo.; Blue Compass is a "person" under § 407.010(5), R.S.Mo.; the Motorhome is "merchandise" under § 407.010(4), R.S.Mo.; and Plaintiff's purchase was a "sale" within §§ 407.010(6) and 407.020, R.S.Mo., made primarily for personal, family, and household purposes.

65. In connection with the sale of the Motorhome, Blue Compass committed deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and/or the concealment, suppression, and omission of material fact, in violation of § 407.020, R.S.Mo., including but not limited to the specific, dated acts particularized in paragraphs 42 through 46 above, namely:

(a) Title Fraud—selling the Motorhome without delivering title at sale or within 30 days, and withholding title for more than fifteen months in violation of § 301.210, R.S.Mo.;

(b) the Parts-Delay Misrepresentation made by the Blue Compass representative "Ethan" between November 21, 2024 and January 11, 2025;

(c) the Falsified "Could Not Duplicate" Service Order generated during the November 2024–February 2025 interval;

(d) the Model-Year Misrepresentation that the Motorhome was a "2025" unit when the chassis is a 2024 model;

(e) the failure to winterize and the concealment of approximately 250 to 284 miles of unauthorized use;

(f) concealment of pre-sale defects through the failure to perform a proper pre-delivery inspection, including the steering defect that manifested at 418 miles; and

(g) the refusal to produce service records and the falsification of service records concerning the Motorhome's condition and use.

66. Blue Compass's violation of § 301.210, R.S.Mo., is an unfair practice per se under the MMPA, 15 C.S.R. § 60-8.090, which provides that an unfair practice includes any practice that violates a state or federal law intended to protect the public; and 15 C.S.R. § 60-8.070 makes it an unfair practice to unilaterally breach unambiguous provisions of consumer contracts.

67. Each act and omission alleged would cause a reasonable consumer to enter into the transaction and to forbear from pursuing legal remedies in favor of repeated repair attempts, and

Plaintiff acted as a reasonable consumer in the circumstances. Plaintiff's reliance was reasonable because Defendants controlled the service records and parts information and made affirmative, specific representations on which a consumer would ordinarily rely.

68. As a direct and proximate result, Plaintiff suffered an ascertainable loss of money and property, calculable with a reasonable degree of certainty as itemized in paragraph 49 above, and is entitled to actual damages, and, in the court's discretion, punitive damages, attorney's fees, and costs under § 407.025, R.S.Mo.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Blue Compass on Count I for actual damages in an amount to be proven at trial, punitive damages, attorney's fees and costs under § 407.025, R.S.Mo., pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT II**
**VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT (§ 407.020, R.S.Mo.)**
**(As to Forest River)**

69. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

70. Plaintiff is a "person," Forest River is a "person," the Motorhome is "merchandise," and Plaintiff's purchase and Forest River's subsequent warranty conduct were in connection with a "sale" within §§ 407.010 and 407.020, R.S.Mo.

71. In connection with that transaction, Forest River committed deception, misrepresentation, unfair practice, and the concealment, suppression, and omission of material fact in violation of § 407.020, R.S.Mo., including:

(a) representing that authorized warranty repairs would be performed within a reasonable time and would remedy the defects, when they did not;

(b) representing through its conduct that the Motorhome would be returned in a defect-free condition, when it was not;

(c) concealing its prior knowledge of substantially similar defects in the same Motorhome line and components, including the structural-crack defect that became the subject of its own TSB 34-1893;

(d) authorizing and performing repairs and making representations that lulled Plaintiff into delaying assertion of her legal remedies; and

(e) deflecting responsibility for safety-critical defects to component suppliers and the chassis manufacturer, notwithstanding its admitted role as end-stage manufacturer responsible for integration, inspection, and quality control of the finished Motorhome.

72. Forest River's breaches of its warranties under the MMWA and the Missouri UCC are themselves unfair practices under 15 C.S.R. §§ 60-8.070 and 60-8.090, and its misrepresentations are assertions not in accord with the facts under 15 C.S.R. § 60-9.070.

73. As a direct and proximate result, Plaintiff suffered an ascertainable loss of money and property calculable with a reasonable degree of certainty, and is entitled to actual damages, and, in the court's discretion, punitive damages, attorney's fees, and costs under § 407.025, R.S.Mo.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Forest River on Count II for actual damages in an amount to be proven at trial, punitive damages, attorney's fees and costs under § 407.025, R.S.Mo., pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF THE MAGNUSON–MOSS WARRANTY ACT (15 U.S.C. § 2301 et seq.)**
**(As to Forest River)**

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

75. The Motorhome is a "consumer product" under 15 U.S.C. § 2301(1); Plaintiff is a "consumer" under 15 U.S.C. § 2301(3) and a "buyer" under § 400.2-103, R.S.Mo.; and Forest River is a "supplier" and "warrantor" under 15 U.S.C. §§ 2301(4)–(5).

76. Forest River extended a "written warranty" under 15 U.S.C. § 2301(6)—which it has admitted issuing as a Limited Warranty—and an "implied warranty" of merchantability arose under 15 U.S.C. § 2301(7) and § 400.2-314, R.S.Mo.

77. Under 15 U.S.C. § 2308(a), Forest River may not disclaim or modify the implied warranty of merchantability where it has extended a written warranty, and any purported disclaimer or modification is void.

78. Forest River failed to comply with its warranty obligations: its repair attempts were unsuccessful, incomplete, or not properly performed, such that the nonconformities are ongoing, in violation of 15 U.S.C. § 2304(a)(1) and its obligation to remedy within a reasonable time and without charge.

79. Forest River was afforded a reasonable opportunity to cure under 15 U.S.C. § 2310(e), having had multiple opportunities and access to the Motorhome over a period exceeding 114 cumulative days, and the more-than-443-day course of dealing described above. Any requirement of pre-suit notice and opportunity to cure under the Limited Warranty has been satisfied; the safety-critical defects, repeated repair attempts, and extended out-of-service periods pleaded above defeat any contention of lack of notice or opportunity to cure.

80. Any exclusive or limited remedy in the Limited Warranty has failed of its essential purpose under § 400.2-719, R.S.Mo., because Forest River failed to remedy the defects despite repeated attempts over an extended period.

81. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, and is entitled under 15 U.S.C. § 2310(d) to damages and other legal and equitable relief, together with costs and expenses, including reasonable attorney's and expert-witness fees under § 2310(d)(2).

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Forest River on Count III for the return of all payments made on the Motorhome, collateral charges, finance charges, incidental and consequential damages, costs of suit including expert-witness and reasonable attorney's fees under 15 U.S.C. § 2310(d)(2), and such further relief as the Court deems just and proper.

**COUNT IV**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (§ 400.2-314, R.S.Mo.)**
**(As to Forest River)**

82. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

83. Forest River is a merchant with respect to motorhomes under § 400.2-104, R.S.Mo., and a warranty of merchantability was implied in the sale of the Motorhome under § 400.2-314, R.S.Mo.

84. The Motorhome was not merchantable at the time of sale and is not merchantable presently in that, among other things, it: (a) suffers from dangerous steering misalignment creating a risk of loss of control; (b) suffers from a defective propane/LP system creating a risk of fire, explosion, and asphyxiation; (c) suffers from structural cracks; (d) suffers from intermittent no-start conditions and electrical defects; and (e) is not fit for the ordinary purposes for which a Class

C motorhome is used. These are safety-critical defects that substantially impair the use, value, and safety of the Motorhome.

85. Under 15 U.S.C. § 2308(a), Forest River cannot disclaim or modify the implied warranty of merchantability, and any purported disclaimer is void. Privity is satisfied or excused because Forest River extended a written warranty directly to Plaintiff and the Motorhome was sold to Plaintiff as the intended consumer.

86. Plaintiff notified Forest River of the breach within a reasonable time after discovering the defects, under § 400.2-607, R.S.Mo. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Forest River on Count IV for damages in an amount to be proven at trial, costs and reasonable attorney's fees, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT V**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (§ 400.2-314, R.S.Mo.)**
**(As to Blue Compass)**

87. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 86 as if fully set forth herein.

88. Blue Compass is a merchant with respect to motorhomes under § 400.2-104, R.S.Mo., and sold the Motorhome to Plaintiff. A warranty of merchantability was implied in the contract of sale under § 400.2-314, R.S.Mo. Plaintiff is in direct contractual privity with Blue Compass, the seller.

89. The Motorhome was not merchantable at the time Blue Compass sold it to Plaintiff, for the reasons set forth in Count IV and elsewhere herein.

90. Plaintiff notified Blue Compass of the breach within a reasonable time after discovering the defects, under § 400.2-607, R.S.Mo. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Blue Compass on Count V for damages in an amount to be proven at trial, costs and reasonable attorney's fees, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT VI**

**BREACH OF EXPRESS WARRANTY (§ 400.2-313, R.S.Mo.)**
**(As to Forest River)**

91. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90 as if fully set forth herein.

92. Under § 400.2-313, R.S.Mo., an affirmation of fact or promise relating to the goods that becomes part of the basis of the bargain creates an express warranty that the goods shall conform.

93. By its actions, affirmations, course of dealing, and conduct—including its admitted issuance of a Limited Warranty, its authorization of warranty repairs at Blue Compass, its processing of warranty claims, its communications with Plaintiff, and its issuance of TSB 34-1893—Forest River created express warranties that the Motorhome would be free from substantial defects in material and workmanship, that Forest River would repair such defects at no charge during the warranty period, and that the Motorhome was fit for the ordinary purposes for which a Class C motorhome is used. These affirmations were part of the basis of the bargain.

94. Forest River breached the express warranties by failing to remedy the substantial defects despite repeated repair attempts and despite its authorization of warranty repairs. Any limitation of remedies has failed of its essential purpose under § 400.2-719, R.S.Mo.

95. Plaintiff notified Forest River of the breach within a reasonable time after discovering the defects, under § 400.2-607, R.S.Mo. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Forest River on Count VI for damages in an amount to be proven at trial, costs and reasonable attorney's fees, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT VII**
**FRAUDULENT MISREPRESENTATION AND FRAUDULENT CONCEALMENT**
**(As to Blue Compass and Forest River)**

96. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 95 as if fully set forth herein, and pleads the circumstances constituting fraud with particularity as set forth in paragraphs 42 through 46 above.

97. As to Blue Compass, the false representations and concealments include, with the who, what, when, where, and how pleaded above: (a) the Parts-Delay Misrepresentation made by "Ethan" between November 21, 2024 and January 11, 2025, contradicted by Forest River's

confirmation that the part was ordered and overnighted in late January 2025; (b) the Falsified "Could Not Duplicate" Service Order generated during the November 2024–February 2025 interval; (c) the representation that title would be timely delivered, when it was withheld for more than fifteen months and Plaintiff was affirmatively misdirected by Blue Compass's and/or Forest River's own account of ownership when she sought the title from the Missouri Department of Revenue; (d) the representation that the Motorhome had been properly inspected and was free from defects, when safety-critical defects were present at delivery; (e) the representation that the Motorhome was a "2025" model when the chassis is a 2024 model; and (f) the concealment of unauthorized use, including approximately 250 to 284 unexplained miles and the failure to winterize.

98. As to Forest River, the false representations and concealments include: (a) representations that authorized repairs would remedy the defects; (b) representations regarding Forest River's commitment to honor its warranty obligations; (c) representations regarding the quality, fitness, and safety of the Motorhome; and (d) concealment of Forest River's prior knowledge of substantially similar defects in the same Motorhome line and components, including the structural-crack defect that became the subject of TSB 34-1893.

99. Each representation and concealment concerned a material fact; each Defendant knew the representation was false or made it with reckless disregard for its truth, and concealed facts it had a duty to disclose; each Defendant intended that Plaintiff rely; Plaintiff was ignorant of the falsity and the concealed facts; Plaintiff justifiably and reasonably relied; and Plaintiff suffered injury and damages as a direct and proximate result of that reliance.

100. These fraud claims arise from duties independent of any contract—including the statutory duty under § 301.210, R.S.Mo., and the common-law duty not to make affirmative misrepresentations of fact and not to conceal material facts during the repair relationship—and the damages sought are not limited to the subject of any bargain; the claims are therefore not barred by the economic-loss doctrine.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Blue Compass and Forest River on Count VII for actual and punitive damages in an amount to be proven at trial, costs, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

## COUNT VIII

**REVOCATION OF ACCEPTANCE (§ 400.2-608, R.S.Mo.)**
**(As to Blue Compass)**

101. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 100 as if fully set forth herein.

102. Under § 400.2-608, R.S.Mo., Plaintiff may revoke acceptance of the Motorhome, whose nonconformity substantially impairs its value to her, where she accepted it on the reasonable assumption that the nonconformity would be cured and it has not been seasonably cured.

103. The defects described above—including the dangerous steering misalignment, the defective propane/LP system creating a risk of fire and explosion, the structural cracks, and the intermittent no-start conditions—substantially impair the value, use, and safety of the Motorhome to Plaintiff.

104. Plaintiff accepted the Motorhome upon the reasonable assumption that the defects would be cured under warranty, and Defendants failed and refused to seasonably cure despite multiple repair attempts and custody of the Motorhome for cumulative periods exceeding 114 days.

105. Plaintiff's revocation is timely, occurring within a reasonable time after Plaintiff discovered or should have discovered the grounds for revocation, the discovery of defects having been ongoing through the present. Any continued possession or limited use of the Motorhome by Plaintiff was reasonable and necessary to mitigate damages and was caused by Defendants' failure to cure and by Blue Compass's withholding of title; such use does not constitute acceptance or waiver and has not caused any substantial change in the Motorhome not caused by its own defects.

106. By the filing of this Second Amended Complaint and by her prior communications, Plaintiff revokes her acceptance of the Motorhome, and is entitled under §§ 400.2-608 and 400.2-711, R.S.Mo., to recover so much of the price as has been paid, together with incidental and consequential damages, and a security interest in the Motorhome for amounts paid.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Blue Compass on Count VIII for the return of all payments made on the Motorhome, including the down payment, all monthly loan payments, and all collateral and finance charges; incidental and consequential damages; a security interest in the Motorhome for amounts paid; costs and reasonable attorney's fees; pre- and post-judgment interest; and such further relief as the Court deems just and proper.

**COUNT IX**
**VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT (§ 407.020, R.S.Mo.)**
**(As to General Motors LLC)**

107. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 106 as if fully set forth herein.

108. Plaintiff is a "person" under § 407.010(5), R.S.Mo.; GM is a "person" under § 407.010(5), R.S.Mo.; the Chassis and the Motorhome are "merchandise" under § 407.010(4), R.S.Mo.; and GM's placement of the Chassis into the stream of commerce for incorporation into the Motorhome, together with GM's extension of the Chassis Warranty, was "in connection with" a sale within §§ 407.010(6) and 407.020, R.S.Mo., made primarily for personal, family, and household purposes.

109. In connection with that transaction, GM committed deception, fraud, misrepresentation, unfair practice, and/or the concealment, suppression, and omission of material fact, in violation of § 407.020, R.S.Mo., including but not limited to the acts particularized in Section G above, namely:

(a) placing the Chassis into the stream of commerce with significant damage and/or a deteriorated condition without making the written disclosure required by § 407.1343, R.S.Mo.;

(b) extending the Chassis Warranty while GM's authorized dealer network refused, as a general and repeated practice, to honor that warranty for a motorhome application, including the refusals by three separate Missouri dealerships;

(c) failing to disclose to Plaintiff, before purchase, that GM's authorized dealers would refuse warranty service for the Chassis;

(d) permitting Modern Auto Chevrolet to perform Chassis repairs as an informal accommodation outside the Chassis Warranty claims process, rather than honoring the warranty directly; and

(e) concealing its knowledge of the Chassis's condition and of the pattern of dealer refusals described above.

110. GM's violation of § 407.1343, R.S.Mo., is an unfair practice per se under the MMPA, 15 C.S.R. § 60-8.090, which provides that an unfair practice includes any practice that violates a state or federal law intended to protect the public. Plaintiff does not assert, and this Count

does not allege, a direct private right of action under § 407.1343, R.S.Mo., itself; rather, GM's violation of that statute's disclosure requirements is alleged solely as a predicate unfair practice under the MMPA, § 407.020 and § 407.025, R.S.Mo.

111. Each act and omission alleged would cause a reasonable consumer to purchase a motorhome built upon the Chassis and to rely on the Chassis Warranty, and Plaintiff acted as a reasonable consumer in the circumstances. Plaintiff's reliance was reasonable because GM controlled information concerning the Chassis's condition, the scope of the Chassis Warranty, and its own dealer network's willingness to perform warranty service.

112. As a direct and proximate result, Plaintiff suffered an ascertainable loss of money and property, calculable with a reasonable degree of certainty, including the Chassis-related damages itemized in paragraph 49 above and the additional repair, diagnostic, and towing costs described in Section G above, and is entitled to actual damages, and, in the court's discretion, punitive damages, attorney's fees, and costs under § 407.025, R.S.Mo.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against GM on Count IX for actual damages in an amount to be proven at trial, punitive damages, attorney's fees and costs under § 407.025, R.S.Mo., pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT X**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (§ 400.2-314, R.S.Mo.)**
**(As to General Motors LLC)**

113. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 112 as if fully set forth herein.

114. GM is a merchant with respect to motor vehicle chassis under § 400.2-104, R.S.Mo., and a warranty of merchantability was implied with respect to the Chassis under § 400.2-314, R.S.Mo. Privity is satisfied or excused because GM extended the Chassis Warranty directly reaching Plaintiff as the ultimate purchaser and knew the Chassis was manufactured for incorporation into a motorhome for retail sale to a consumer such as Plaintiff.

115. The Chassis was not merchantable at the time of sale and is not merchantable presently in that, among other things, it: (a) suffers from dangerous steering misalignment creating a risk of loss of control, which manifested at only 418 miles; (b) suffers from intermittent no-start conditions requiring repeated towing; and (c) suffers from frame corrosion and a fuel-system leak

identified by independent inspection. These are safety-critical defects that substantially impair the use, value, and safety of the Motorhome.

116. Plaintiff notified GM of the breach within a reasonable time after discovering the defects, including through the February 2026 demand sent directly to GM's Chief Executive Officer, under § 400.2-607, R.S.Mo. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against GM on Count X for damages in an amount to be proven at trial, costs and reasonable attorney's fees, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT XI**
**BREACH OF EXPRESS WARRANTY (§ 400.2-313, R.S.Mo.)**
**(As to General Motors LLC)**

117. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 116 as if fully set forth herein.

118. Under § 400.2-313, R.S.Mo., an affirmation of fact or promise relating to the goods that becomes part of the basis of the bargain creates an express warranty that the goods shall conform. GM's extension of the Chassis Warranty constituted such an affirmation and became part of the basis of the bargain for the Motorhome, upon which Plaintiff relied in purchasing a motorhome built on a GM chassis.

119. GM breached the Chassis Warranty by refusing, through its authorized dealer network, to perform warranty repairs on the Chassis, including the refusals by three Chevrolet-authorized dealerships in Missouri, and by permitting Modern Auto Chevrolet to perform repair work outside the Chassis Warranty claims process rather than honoring the warranty directly.

120. Any limitation of remedies in the Chassis Warranty has failed of its essential purpose under § 400.2-719, R.S.Mo., because GM's own authorized dealer network refused to perform the warranty repairs the Chassis Warranty purports to provide.

121. Plaintiff notified GM of the breach within a reasonable time after discovering the defects and the dealer refusals, under § 400.2-607, R.S.Mo. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against GM on Count XI for damages in an amount to be proven at trial, costs and reasonable attorney's fees, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT XII**
**VIOLATION OF THE MAGNUSON–MOSS WARRANTY ACT (15 U.S.C. § 2301 et seq.)**
**(As to General Motors LLC)**

122. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 121 as if fully set forth herein.

123. The Chassis and the Motorhome are "consumer products" under 15 U.S.C. § 2301(1); Plaintiff is a "consumer" under 15 U.S.C. § 2301(3); and GM is a "supplier" and "warrantor" under 15 U.S.C. §§ 2301(4)–(5) with respect to the Chassis Warranty.

124. The Chassis Warranty is a "written warranty" under 15 U.S.C. § 2301(6).

125. GM failed to comply with its warranty obligations by refusing, through its authorized dealer network, to perform warranty service on the Chassis, in violation of 15 U.S.C. § 2304(a)(1) and GM's obligation to remedy Chassis defects within a reasonable time and without charge.

126. GM was afforded a reasonable opportunity to cure under 15 U.S.C. § 2310(e): Plaintiff sought warranty service from three separate authorized Chevrolet dealerships, each of which refused, and the Motorhome was ultimately repaired only informally, outside the Chassis Warranty claims process. Any requirement of pre-suit notice and opportunity to cure has been satisfied by these repeated attempts and by the February 2026 demand sent directly to GM.

127. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, and is entitled under 15 U.S.C. § 2310(d) to damages and other legal and equitable relief, together with costs and expenses, including reasonable attorney's and expert-witness fees under § 2310(d)(2).

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against GM on Count XII for damages in an amount to be proven at trial, costs of suit including expert-witness and reasonable attorney's fees under 15 U.S.C. § 2310(d)(2), and such further relief as the Court deems just and proper.

**COUNT XIII**
**STRICT PRODUCTS LIABILITY (DESIGN AND/OR MANUFACTURING DEFECT)**
**(As to General Motors LLC)**

128. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

129. GM designed, manufactured, and sold the Chassis in the course of its business, and expected the Chassis to reach, and it did reach, Plaintiff without substantial change in the condition in which it was sold, having been incorporated into the Motorhome by Forest River.

130. The Chassis was in a defective condition unreasonably dangerous when put to its reasonably anticipated use, in that, among other things, its steering and alignment system was defective in a manner that caused the Motorhome to pull violently to the right and to nearly leave the roadway on at least two occasions, and its starting and electrical systems were defective in a manner that caused repeated, unpredictable failures to start.

131. The defective condition of the Chassis existed at the time it left GM's control and directly caused or directly contributed to cause the near-loss-of-control incidents, the towing incidents, and the other damages described above.

132. As a direct and proximate result of the Chassis's defective and unreasonably dangerous condition, Plaintiff has suffered damages, including but not limited to the diminished value of the Motorhome, repair and diagnostic costs, and emotional distress arising from the safety-critical nature of the defect and the risk to Plaintiff's life and safety.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against GM on Count XIII for actual and punitive damages in an amount to be proven at trial, costs, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT XIV**
**NEGLIGENCE**
**(As to General Motors LLC)**

133. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 132 as if fully set forth herein.

134. GM owed Plaintiff, as a reasonably foreseeable user of the Chassis, a duty to exercise reasonable care in the design, manufacture, inspection, and quality control of the Chassis, and a duty to disclose known defects and damage concerning the Chassis, including the duty imposed by § 407.1343, R.S.Mo.

135. GM breached that duty by, among other things, manufacturing and/or releasing for sale a Chassis with a defective steering and alignment system and a defective starting/electrical system, and by failing to disclose the Chassis's condition as alleged above.

136. As a direct and proximate result of GM's negligence, Plaintiff suffered the near-loss-of-control incidents, the towing incidents, and the other damages described above.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against GM on Count XIV for damages in an amount to be proven at trial, costs, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**COUNT XV**
**FTC HOLDER RULE — DERIVATIVE LIABILITY (16 C.F.R. § 433.2)**
**(As to M&T Bank)**

137. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein.

138. The Retail Installment Contract and Security Agreement is a "consumer credit contract" within the meaning of 16 C.F.R. § 433.1(d), and contains the notice required by the FTC Holder Rule, 16 C.F.R. § 433.2.

139. M&T Bank is the assignee and current holder of the Contract.

140. As holder of the Contract, M&T Bank is subject to all claims and defenses Plaintiff could assert against Blue Compass as seller of the Motorhome, including but not limited to the claims asserted in Counts I, V, VII (as to Blue Compass), and VIII above, up to the amount Plaintiff has paid under the Contract to date.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against M&T Bank on Count XV, derivatively and to the extent of Plaintiff's claims against Blue Compass, capped at amounts paid by Plaintiff under the Contract, together with costs, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

DONNER APPLEWHITE, ATTORNEYS AT LAW

By: /s/ Christian T. Misner
Christian T. Misner
Attorney at Law, #MO65572
5205 Hampton Ave.
St. Louis, MO 63109
Phone: (314) 240-5351
Facsimile: (888) 785-4461
Email: christian.misner@da-lawfirm.com

**Attorney for Plaintiff Sandy A. Moriarty**

**CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Defendant Forest River, Inc. (Baker Sterchi Cowden & Rice, LLC) and counsel for Defendant RV Retailer, LLC d/b/a Blue Compass RV (Ensz & Jester, P.C.). Defendants General Motors LLC and M&T Bank will be served with a summons and this Second Amended Complaint in accordance with Federal Rule of Civil Procedure 4, as they have not yet appeared in this action.

/s/ Christian T. Misner